**FOREMOST SALES PROMOTIONS, INC., an Illinois corporation, Plaintiff,**

v.

**DIRECTOR, BUREAU OF ALCOHOL, TOBACCO AND FIREARMS, an agency of the United States Department of the Treasury; Internal Revenue Service; David R. Chupp; and Midwest Regional Regulatory Administrator, Defendants.**

No. 82 C 4354.

United States District Court, N.D. Illinois, E.D.

Aug. 29, 1986.

Jay L. Schultz, Allen H. Schultz, Schultz & Schultz, Chicago, Ill., for plaintiff.

Steven A. Miller, Asst. U.S. Atty., Chicago, Ill., for defendants.

## MEMORANDUM OPINION AND ORDER

BRIAN BARNETT DUFF, District Judge.

Plaintiff Foremost Sales Promotions, Inc. ("Foremost") sues for a judgment declaring its right to continue in business in the face of a challenge by the defendant Director of the Bureau of Alcohol, Tobacco and Firearms ("ATF").

ATF regulates, under the Federal Alcohol Administration Act, 27 U.S.C. § 201 *et seq.* ("FAA Act"), distillers, rectifiers, producers and importers of spirits, wine and malt beverages ("suppliers"). The Act does not give ATF jurisdiction over retailers or promoters of alcoholic beverages.

ATF indirectly challenged Foremost's business practices when it prosecuted Hiram Walker Distributing Company ("HWDC")[1] for doing business with Foremost. ATF charged Walker with violating provisions of the FAA Act which prohibit suppliers from inducing retailers to sell their products exclusively through commercial bribery or through the establishment of a "tied house" arrangement such as would allow the supplier to exercise monopolistic control over the retailer. 27 U.S.C. § 205(b) and (c).[2]

---

1. HWDC is not a party to this law suit.

2. Section 205 makes it unlawful for a supplier:
   (b) "Tied house"
   To induce through any of the following means, any retailer, engaged in the sale of distilled spirits, wine, or malt beverages, to purchase any such products from such person to the exclusion in whole or in part of distilled spirits, wine, or malt beverages sold or offered for sale by other persons in interstate or foreign practice of using such means, or any of them, to such an extent as substantially to restrain or prevent transactions in interstate or foreign commerce in any such products, or if the direct effect of such inducement is to prevent, deter, hinder, or restrict other persons from selling or offering for sale any such products to such retailer in interstate or foreign commerce: (1) By acquiring or holding ... any interest in any license with re-

## FACTS

### 1. *Foremost Sales Promotions, Inc.*

Foremost was incorporated under the laws of Illinois on October 13, 1949. On November 16, 1978, the Illinois Attorney General ruled that Foremost conducts business as a "franchisor". Since that time, Foremost has operated a franchise division that does business with retail liquor stores and a marketing division that does business with suppliers. For the fiscal year October 1, 1980 to September 30, 1981, Foremost's income was $765,000 from the franchise division and $270,000 from the marketing division.

Foremost maintains two checking accounts: a franchise account and a general account. Only income derived from franchise fees is deposited in the franchise account. All other income is deposited in the general account. The franchise account is used only for expenses relating to advertising and the general account is used to pay all other expenses including salaries for Foremost's 15 employees. Foremost transfers money from the franchise account to the general account as needed to meet expenses.

The franchise agreement governs Foremost's relationship with its 70 franchisees [3] and requires Foremost to perform two obligations: 1) Foremost must permit the franchisee to operate under the service mark "Foremost Liquor Store" or "Foremost Liquors"; and 2) Foremost must publish advertising carrying the names and addresses of the franchisees at least once a week in a major Chicago newspaper. In return, the franchisee agrees to be listed as a Foremost Liquor Store in the telephone directory and to pay an annual fee—$11,140 for a Chicago franchise, $11,400 for a Miami franchise, and $9,840 for a franchise in Sarasota, Florida. The franchisee also agrees to use the Foremost mark in any advertising it may do on its own. Such advertising may not be placed in any newspaper in which the weekly Foremost advertising is running.

Foremost also does business with suppliers of alcoholic beverages. Suppliers pay Foremost a subscription fee and Foremost agrees to include their product in Foremost advertising and to provide various promotional services such as booking suppliers' displays in retail stores, distributing coupons for the suppliers' products, and creating holiday packages that include the

---

spect to the premises of the retailer; or (2) by acquiring any interest in real or personal property owned, occupied, or used by the retailer in the conduct of his business; or (3) by furnishing, giving, renting, lending or selling to the retailer, any equipment, fixtures, signs, supplies, money services, or other things of value, subject to such an exception as the Secretary of the Treasury shall by regulation prescribe, having due regard for public health, the quantity and value of the articles involved, established trade customs not contrary to the public interest and the purposes of this subsection; or (4) by paying or creating the retailer for any advertising, display, or distribution service; or (5) by guaranteeing any loan or the repayment of any financial obligation of the retailer; or (6) by extending to the retailer credit for a period in excess of the credit period usual and customary to the industry for the particular class of transactions, as ascertained by the Secretary of the Treasury and prescribed by the regulations by him; or (7) by requiring the retailer to take and dispose of a certain quota of any of such products; or

(c) Commercial bribery
  To induce through any of the following means, any trade buyer engaged in the sale of distilled spirits, wine, or malt beverages, to purchase any such products from such person to the exclusion in whole or in part of distilled spirits, wine, or malt beverages sold or offered for sale by other persons in interstate or foreign commerce, if such inducement is made in the course of interstate or foreign commerce, of if such person engages in the practice of using such means, or any of them, to such an extent as substantially to restrain or prevent transactions in interstate or foreign commerce in any such products, or if the direct effect of such inducement is to prevent, deter, hinder, or restrict other persons from selling or offering for sale any such products to such trade buyer in interstate or foreign commerce: (1) By commercial bribery; or (2) by offering or giving any bonus, premium, or compensation to any officer, or employee, or representative of the trade buyer;

**3.** Foremost has approximately 54 franchises in Chicago and 16 in Florida.

suppliers' product. The subscription fee may be $450 per week, $750 per month, or $1,000 per month, depending on the services that Foremost agrees to provide. In their depositions, representatives of certain suppliers testified that after they terminated their agreement with Foremost, their products no longer appeared, or appeared infrequently, in Foremost advertising.

The link between the suppliers and the retailers is the weekly newspaper advertisement which Foremost is obligated to prepare under the franchise agreement and which serves as the site for ads that Foremost places on behalf of suppliers. When Foremost prepares the ads, it assigns a discount price for the advertised products that is determined by the retailer's cost per bottle based on the purchase of a single case. A week or two before the ads run, Foremost sends the retailers notice of the items that will be advertised and their discounted price. The retailers then stock up on those products so that they can meet the increased demand created by the advertising.

In their depositions, Foremost retailers testified that Foremost ads increase the demand for advertised products; sales for these items are double and triple the sales of the same products when they are not featured in Foremost advertising. While the retailers are not obligated under the franchise agreement to carry the advertised brands or to sell them at the advertised price, it is clear from the deposition testimony that they are required to do so in order to satisfy their customers.

The evidence does not show that sales of unadvertised items decline when a competing product is featured in Foremost inventory. In his deposition, Kevin R. Zee, the manager of a Foremost retail liquor store, states at page 24: "I do not reduce inventory of an item just because ... another item is advertised, because the item that is not advertised will still continue to sell at its regular price."

## 2. *ATF Investigation*

On December 17, 1979, ATF began its investigation of Hiram Walker Distributing Company's relationship with Foremost. After the investigation, ATF concluded that HWDC violated the tied house and commercial bribery prohibitions, 27 U.S.C. § 205(b) and (c). ATF notified HWDC of its conclusions on September 10, 1981. On September 18, ATF completed their formal report and recommended substantial penalties against HWDC for commercial bribery violations and further recommended that those penalties be publicized to deter similar violations.

HWDC representatives met with ATF officials to present their case and to discuss settlement on September 24, 1981. Irving Robbins, Chairman of the Board and founder of Foremost, states in his affidavit that ATF never notified him of the HWDC investigation. Prior to the settlement, HWDC advised him of their intent to settle and to agree with ATF not to do business with Foremost. Foremost asked HWDC to ask ATF if it could be present at the September 24, 1981 meeting. Foremost's request was denied.

In December, 1981, HWDC and ATF agreed to a settlement which provided for HWDC to pay a $20,000 fine and to discontinue its business with Foremost. On January 22, 1982, ATF issued a press release which stated in part as follows:

> The Bureau of Alcohol, Tobacco and Firearms (ATF) has accepted $20,000 from the Hiram Walker Distributing Co.—a wholesale liquor dealer in Des Plaines, Illinois—to settle alleged violations of the trade practices provisions of the Federal Alcohol Administration Act (FAA).
>
> ATF charged the wholesaler with "tied house" violations and commercial bribery for making payments to Foremost Sales Promotions, Inc., a Chicago-based company which represents a number of retail liquor dealers in Illinois. The payments, which were for advertising the Foremost retailers in local newspapers, resulted in the retailers' purchase of Hiram Walker Distributing Co. products over the products of competitive wholesalers.

As a consequence of the ATF investigation and the publicity surrounding it, many suppliers no longer do business with Foremost.

## DISCUSSION

The cross motions for summary judgment raise two issues: 1) whether Foremost has standing; and 2) whether suppliers violate the FAA Act when they do business with Foremost.

### 1. *Standing*

■ There are two requirements for standing. The first, a constitutional limitation on jurisdiction, requires an injury-in-fact which will establish a case or controversy. The second, a judicial rule of self-restraint, requires the court to consider "whether the interest sought to be protected by the complainant is arguably within the zone of interests to be protected or regulated by the statute or constitutional guarantee in question." *Data Processing Service v. Camp*, 397 U.S. 150, 153, 90 S.Ct. 827, 829, 25 L.Ed.2d 184 (1969). Defendants do not contest plaintiff's injury-in-fact, but argue that plaintiff is not within the zone of interests protected by the FAA Act.

■ The interests asserted by Foremost are, however, arguably within the zone of interests regulated by the FAA Act. While Foremost is not directly regulated under the statute, it is within the zone of interests since it does business with those who are directly regulated. In *Cotovsky-Kaplan Physical Therapy Assoc. Ltd. v. United States*, 507 F.2d 1363, 1367 (7th Cir. 1975), the court stated that:

[I]f, pursuant to what it perceives to be its statutory authority, a government agency regulates the contractual relationships between a regulated party and an unregulated party, the latter as well as the former may have interests that are arguably within the regulated zone for purposes of testing standing, and for

this purpose a total prohibition is a form of regulation.

507 F.2d 1363, 1367 (7th Cir.1975).

ATF's regulation of HWDC consequentially regulates and in fact prohibits Foremost's business with suppliers. ATF charged HWDC with violating the statute by making payments to Foremost; the $20,000 fine is a penalty for doing business with Foremost. The publicity surrounding the prosecution of HWDC served notice to other suppliers that the agency with the power to revoke their license to do business believed that their transactions with Foremost were illegal. As a consequence of the HWDC investigation, suppliers stopped doing business with Foremost. The consequences for Foremost are very concrete and Foremost is within the zone of interest regulated by the FAA Act.

### 2. *Statutory Violation*

■ Foremost asks this court to declare that its business does not violate the tied house and commercial bribery provisions of the FAA Act. This court has reviewed the statute, the legislative history and the few cases interpreting the statute and concludes that the Foremost enterprise does not violate the FAA Act because Foremost's practices do not induce retailers to purchase the products of Foremost suppliers to the exclusion of other suppliers.

In *National Distributing Company, Inc. v. United States Treasury Department, Bureau of Alcohol, Tobacco and Firearms*, 626 F.2d 997 (D.C.Cir.1980), the court found, after an extensive discussion of the history of the FAA Act, that a price discount offered by a wine wholesaler to wine retailers did not violate the Act.[4] The court said that when Congress passed the FAA Act, immediately after the repeal of prohibition, it was concerned with "The Whisky Trust". "The Whisky Trust", as used in the legislative debates, describes the concentration in the whisky industry

---

**4.** It was alleged that the price discount violated the tied house provision. However, the court noted that commentary on the tied house provi-

sion also relates to the commercial bribery provision. 626 F.2d at 1015.

that resulted from the fact that only a few whisky manufacturers held permits and/or whisky stock pending the repeal of prohibition.[5] Congress passed § 205(b) and (c) to break up this concentration and to prevent suppliers from imposing monopolistic control over the retailers. The court stated that:

> The primary purpose of the 'Exclusive outlet', 'Tied house', and 'Commercial bribery' subsections of Section 5 seems to be prevention of a form of vertical integration whereby wholesalers or producers might gain effective control of ostensibly independent retail outlets.

626 F.2d at 1004.

Congress intended to prohibit vertical integration which would allow suppliers to do business with a retailer, free from competition with other suppliers. Both the tied house and the commercial bribery provisions thus bar a supplier from inducing a retailer to purchase its brands, "to the exclusion in whole or in part of distilled spirits, wine or malt beverages sold or offered for sale by other persons". There is no evidence that the Foremost enterprise diminished competition or that suppliers were excluded from doing business with Foremost retailers.

While the parties ignored this issue in their briefs, it appears that defendants assume that the increase in sales for Foremost suppliers whose brands are advertised means that sales of other brands are unlawfully foreclosed. This is contrary to the evidence that sales for unadvertised items remained constant during the week when a competitor was featured in the Foremost ad. The increase in sales results from an increase in demand generated by the advertising and not from a decline in the sales of other brands.

Suppliers who choose not to do business with Foremost's marketing division are not foreclosed from competition with Foremost suppliers and may do business with Foremost franchisees. Non-Foremost suppliers may conduct their own advertising campaign to counter the advertising which features Foremost suppliers. In addition, ATF regulations allow a supplier to pay for retailer advertising that features its brand. 27 C.F.R. § 6.98. Foremost retailers are free to feature any brand in whatever advertising they do beyond the weekly newspaper ads placed by Foremost. The only restriction imposed by the franchise agreement is that such advertising carry the Foremost service mark.

Foremost has not, therefore, violated the tied house or the commercial bribery provisions of the FAA Act because it does not induce retailers to purchase from Foremost suppliers to the exclusion of non-Foremost suppliers.

## CONCLUSION

In its prayer for relief, Foremost asks this court (1) to declare that Foremost is an independent contractor and not an agent or representative of the retailers; (2) to declare that Foremost's business with suppliers does not violate the FAA Act, 27 U.S.C. § 205(a) and (b); and, (3) to enjoin ATF from declaring Foremost's business with suppliers to be a violation of the Act.

Foremost's request for a declaration that it is not an agent of its franchisees stems from its theory that it did not violate the FAA Act because HWDC did not give anything of value to a "representative" of the retailers. The court need not decide this issue since its conclusion that the Foremost enterprise does not violate the statute rests on its finding that the Foremost enterprise does not exclude sales by non-Foremost suppliers. The legal status of the Foremost-retailer relationship is not relevant to this conclusion, and the court's ruling of this issue would be advisory only.

Foremost's request for an injunction is, at this time denied. If ATF chooses to ignore this court's ruling and proceeds to prosecute those suppliers who do business with Foremost, it may request injunctive

---

**5.** The court noted that concern about "The Whisky Trust" was challenged only by then Congressman Dirksen of Illinois who, alone, defended the competitiveness of the whisky industry.

relief pursuant to 28 U.S.C. § 2202 at that time.

In its briefs, Foremost argues that ATF violated its constitutional rights when it prosecuted HWDC. Foremost does not, however, request a remedy for the constitutional violation. In addition, there is no record which would guide the court in fashioning a remedy were it to determine that one were needed. The court does not, therefore, decide the constitutional issues raised in the briefs.

In sum, the court denies defendant's motion for summary judgment, and grants Foremost's motion for summary judgment. The court declares that the Foremost enterprise does not violate 27 U.S.C. § 205(b) or (c) because it does not exclude sales by non-Foremost suppliers.

IT IS SO ORDERED.